**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

GAOCHUN ZUO,
Plaintiff,
v.
B.A. SEMAIA, *et al.*,
Defendant.

Case No. 5:26-cv-04090-ACCV

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Gaochun Zuo ("Petitioner") filed a counseled Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition") seeking immediate release from Respondents' custody at the Adelanto ICE Processing Center in Adelanto, California. (Dkt. 1.) The Court has considered the Petition, Respondents' Answer, and Petitioner's Reply.

## I. FACTUAL AND LEGAL BACKGROUND

Petitioner is a native and citizen of the People's Republic of China. (Dkt. 1 at 2.) Petitioner was inspected and admitted into the United States on January 7, 2020, as a F1 Student to attend the University of California, Los Angeles. (Dkt. 8-1 at 5.) On December 17, 2020, Petitioner filed for Asylum. (*Id.*) His Asylum application remains pending. (*Id.*) Petitioner asserts he appeared in Immigration Court "as required". (Dkt. 1 at 7.) Petitioner further asserts that "[a]t no time did Petitioner abscond from immigration authorities or attempt to conceal his presence from the Government." (*Id.*)

Petitioner was arrested for Possession of a Controlled Substance on August 31, 2024. (Dkt. 8-1 at 5.) The charge was dismissed. (*Id.*) On April 8, 2026, Petitioner was arrested for a DUI, evading police, and possession of a controlled substance. (*Id.*) Although the information provided by the parties is not clear, it appears that Petitioner was released from custody the same day. (*Id.*) Immigration and Customs Enforcement ("ICE") then took Petitioner into custody. (*Id.*) Petitioner was subsequently transferred to the Adelanto ICE Processing Center, where he remains detained. (Dkt. 1 at 5.)

On July 21, 2026, Petitioner filed the Petition. (Dkt. 1.) Petitioner brings five claims for relief. (*Id.* at 14-29.) All of Petitioners' claims are for violations of the Fifth Amendment, procedural and substantive due process. (*Id.*) Petitioner seeks immediate release, among other things. (*Id.* at 29.) Attached as Exhibit E to the Petition, is a letter from one of Petitioner's attorneys. (*Id.* at 45.) Petitioner's attorney states that Petitioner was arrested for "misdemeanor driving under the influence" and that "no criminal charge ha[s] been filed against him." (*Id.*)

On July 29, 2026, Respondents filed Federal Respondents' Answer to Petition for Writ of Habeas Corpus ("Answer"). (Dkt. 8.). Respondents argue: (1) There is no jurisdiction to contest the Immigration Judge's bond decision; (2) Petitioner has failed to exhaust administrative remedies and may appeal to the BIA; and (3) Petitioner does not identify any due process violation or error of law that justifies habeas relief. (*Id.*) Respondents attached to the Answer, Order of Immigration Judge from June 17, 2026. (Dkt. 8-1.) The Immigration Judge did not provide any analysis or a summary in the written order; the Immigration Judge provided a summary of its decision and analysis on the record. (*Id.*)

On July 21, 2026, Petitioner filed a reply. (Dkt. 9.) Petitioner argues that Respondents mischaracterize Petitioner's claims; 8 U.S.C. § 1226(e) does not deprive the Court of jurisdiction over Petitioner's constitutional habeas claims; a post-deprivation bond hearing does not moot Petitioner's constitutional claims; and habeas corpus remains Petitioner's only meaningful remedy. (*Id.*)

## II. ANALYSIS

### A. Habeas Jurisdiction

A writ of habeas corpus may be granted to any petitioner who demonstrates "he is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 1833, 36 L. Ed. 2d 439 (1973). "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 474, 124 S. Ct. 2686, 2692, 159 L. Ed. 2d 548 (2004). A petitioner bears the burden of proving by the preponderance of the evidence that he is entitled to habeas relief. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

### B. Petitioner's Due Process Claim

Petitioner argues that his detention since April 8, 2026, without notice and a pre-detention hearing, violates the due process clause of the Fifth Amendment.

Under the Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id*. at 693. As the Supreme Court recently reaffirmed, the Fifth Amendment "entitles [noncitizens] to due process of law in the context of removal proceedings." *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (citation modified) (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025)).

"Due process is flexible and calls for such procedural protections as the particular situation demands." *United States v. Rivera-Valdes*, 157 F.4th 978, 991 (9th Cir. 2025) (citation modified) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481

(1972)). In general, due process "requires some kind of a hearing before the State deprives a person of liberty or property." *Shinault v. Hawks*, 782 F.3d 1053, 1058 (9th Cir. 2015) (citation modified) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). To determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation," courts apply the three-part balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Yagman v. Garcetti*, 852 F.3d 859, 864 (9th Cir. 2017) (citation modified) (quoting *Shinault*, 782 F.3d at 1057). Under the *Mathews* test, courts consider "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." *Id*. (citation modified) (quoting *Shinault*, 782 F.3d at 1057).

Additionally, while the U.S. Constitution generally requires some kind of hearing before the State deprives a person of liberty or property, there still may be situations in which a prompt post-deprivation hearing is appropriate. *See Guillermo M. R.*, 791 F. Supp. 3d 1021, 1035-36 (N.D. Cal. July 17, 2025). The Courts recognize that there may be situations where an urgent arrest is required and a prompt post-deprivation hearing is appropriate. *See Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *11 (E.D. Cal. Aug. 28, 2025) (*citing Zinermon*, 494 U.S. at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R.*, 2025 WL 1983677, at *9 ("absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ").

**1. Petitioner has a substantial private interest in remaining out of immigration custody.**

First, Petitioner has a substantial private interest in remaining out of immigration custody. After Petitioner lawfully entered the United States in 2020 and filed his asylum application in 2020, Respondents "made a decision not to detain [him]" during

the pendency of his application. *Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026). Hence, for nearly six years, Respondents, with "full knowledge of Petitioner's identity, immigration status [,] and location during the pendency of [his] immigration application [] . . . continuously elected not to detain [him] while exercising authority over [his] legal proceedings." *Zhou v. Janecka*, No. EDCV 26-04167-DTB, 2026 WL 2365550, at *5 (C.D. Cal. Aug. 14, 2026). This decision to allow Petitioner to live freely in the community gave rise to "the most elemental of liberty interests – the interest in being free from physical detention by one's own government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

Additionally, while Respondents' decision not to detain Petitioner was discretionary, *see* 8 U.S.C. § 1226(a), that decision nonetheless created a protected interest in remaining at liberty while the government processed his asylum application. *Zhou*, 2026 WL 2365550, at *4 (collecting cases finding a protectable interest where the government decided "not to detain [a petitioner] or otherwise impede [their] liberty while exercising authority over [them] for purposes of adjudicating [their] applications for immigration relief"); *see also Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause."). Petitioner relied on this liberty interest to live freely and "form the [] enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. The length of Petitioner's freedom, nearly six years, pending the adjudication of his asylum application thus only strengthens his interest in his continued freedom from immigration detention. *See Doe*, 787 F. Supp. 3d at 1093 (finding the government's actions in conditionally allowing the petitioner to live outside immigration custody for five years created a protected liberty interest); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) (finding the more than two years a petitioner lived outside of immigration custody "heightened" her liberty interest).

However, Petitioner was arrested on April 8, 2026, for evading law enforcement, driving under the influence, and possession of a controlled substance. (Dkt. 8-1 at 5.)

ICE detained Petitioner the same day. (*Id.*) While the first *Mathews* factor weighs in favor of Petitioner, it does not weigh as strongly as it would for a noncitizen without any showing of material changed circumstances, particularly where such circumstances may be relevant to the assessment of dangerousness or flight risk. *See Hernandez v. Mullin, et al.*, No. 2:26-cv-02034, 2026 WL 1998571, at *5 (W.D. Wash. July 10, 2026).

**2. The risk of erroneous deprivation is high.**

Second, the risk of erroneous deprivation is high without a pre-detention hearing. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. *Zadvydas*, 533 U.S. at 690; *see also Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). The government permitted Petitioner to remain at liberty for nearly six years after he filed his asylum application and his visa expired. (Dkt. 8-1 at 5.) During this time, Petitioner contends he attended immigration court proceedings, and Respondents do not dispute this. (Dkt. 1 at 7; *generally* Dkt. 8.). Petitioner, however, was recently arrested for numerous crimes, including evading law enforcement. (Dkt. 8-1 at 5.) ICE took Petitioner into custody the same day he was arrested for those crimes. (*Id.*) While the second *Mathews* factor also weighs in favor of Petitioner, it does not weigh as strongly as it would for a noncitizen without any showing of material changed circumstances, particularly where such circumstances may be relevant to the assessment of dangerousness or flight risk.

**3. Government's Interests**

The final *Mathews* factor is the government's interest. The Government's interest in enforcing immigration laws, including "protecting the public from dangerous criminal [noncitizens]" and "securing [a noncitizen's] ultimate removal," are "interests

of the highest order." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). "These interests are in fact served by the individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures." *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1161 (D. Nev. 2025). The Court can identify no reason that an individualized hearing would interfere with the government's interests. Respondents have not demonstrated that the administrative burden of providing a timely post-deprivation hearing is outweighed by the serious risk of erroneous deprivation, and the Petitioner's interest in continued liberty. As such, the third *Mathews* factor weighs in Petitioner's favor to have a prompt hearing that addresses the basis for his re-detention.

On balance of the *Mathews* factors, the Court finds that a prompt post-deprivation hearing to be consistent with due process where such hearing considers the grounds for Petitioner's detention and Petitioner's flight risk and risk of dangerousness generally.

Thus, Petitioner is entitled to habeas relief for his due process claim.

### C. Appropriate Relief

A bond hearing—where the Government bears the burden to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community—is the appropriate relief. *See Kou v. Warden of the Adelanto Ice Processing Ctr.*, No. 5:26-CV-02923-AJR, 2026 WL 1722906, at *4 (C.D. Cal. June 11, 2026) (finding that petitioner's re-detention was triggered by an arrest, and the proper remedy for a due process violation was a prompt bond hearing where the government bears burden to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community); *Guerrero Alfaro v. Warden Golden State Annex Det. Facility*, No. 1:26-CV-02983-JLT-EPG-HC, 2026 WL 1224249, at *4 (E.D. Cal. May 5, 2026), report and recommendation adopted *sub nom. Alfaro v. Warden Golden State Annex Det. Facility*, No. 1:26-CV-02983 JLT EPG (HC), 2026 WL 1272626 (E.D. Cal. May 8, 2026)

(ordering bond hearing for petitioner who was "detained after he was arrested for aggravated assault – strangulation of a domestic violence victim"). The Court is not persuaded by Respondents' argument that Petitioner already received an immigration bond that comports with due process because (1) Respondents failed to provide the Court with any information that the Immigration Judge relied on in denying Petitioner bond, and (2) the Immigration Judge placed the burden on Petitioner, not Respondents. (Dkt. 8-1 at 1.) Accordingly, the Court finds that a post-deprivation hearing is the appropriate remedy. Having reached the above conclusion on Petitioner's procedural due process claim, the Court declines to address Petitioner's other claims.

## III. RECOMMENDATION

For the reasons stated, the Court grants the Petition and orders Respondents to provide Petitioner Gaochun Zuo an individualized bond hearing before an immigration judge within seven days, where the Government bears the burden to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community. Respondents must file a notice of compliance within seven days of the bond hearing.

DATED: September 7, 2026

HON. ANGELA C. C. VIRAMONTES
United States Magistrate Judge